IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| THE HALLWOOD GROUP INCORPORATED, | § § § | |
|---|---|---|
| Appellant, | § | Civil Action No. |
| v. | § § | 3:10-CV-1198-K |
| RAY BALESTRI, Trustee, and HALL PHOENIX/INWOOD, LTD., | § § § | (Bankruptcy Appeal) |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) an appeal from the bankruptcy court's order denying a motion to compel arbitration by The Hallwood Group Incorporated ("the Hallwood Group") and (2) the Hallwood Group's Motion to Strike Certain Items Included in the Record by Appellees Ray Balestri and Hall Phoenix/Inwood, Ltd. (collectively "Phoenix/Inwood") (Doc. No. 10). The Court **AFFIRMS** the bankruptcy court's denial of the motion to compel arbitration for reasons stated herein and **DENIES as moot** Hallwood Group's Motion to Strike.

I.  **Background**

   A.   **The companies and contracts involved**

There are four main actors involved in this dispute. The first is Hallwood Energy, L.P. ("Hallwood Energy"), a Texas limited partnership in the business of exploring and drilling for natural gas. The second is the Hallwood Group, a publicly-traded company

based out of Dallas, TX. The Hallwood Group owned half of the general partner in Hallwood Energy and approximately 22% of the limited partnership interests, allowing the Hallwood Group to largely control Hallwood Energy. The third is Phoenix/Inwood, a limited partnership based out of Frisco, TX. Phoenix/Inwood was the largest secured and unsecured creditor of Hallwood Energy. FEI Shale is the fourth entity, a limited partnership that is also in the business of exploring for and producing oil and gas. FEI Shale is a subsidiary of a Canadian drilling company based in Calgary.

This appeal centers around two contracts that the debtor, Hallwood Energy, entered into in June 2008. The first was entitled the Acquisition and Farmout Agreement ("the Farmout Agreement"). The Farmout Agreement was made between Hallwood Energy and FEI Shale. Under the Farmout Agreement, FEI Shale would provide funding for drilling operations in exchange for a share of the proceeds from successful wells.

The second contract was the Equity Support Agreement, which was made between Hallwood Energy and the Hallwood Group. The Equity Support Agreement obligated the Hallwood Group to provide $12.5 million in cash to Hallwood Energy. In Exhibit E to the Farmout Agreement, FEI Shale required Hallwood Energy to create the Equity Support Agreement. FEI Shale was concerned about Hallwood Energy's ability to meet its obligations and conditioned enforcement of the Farmout Agreement on the creation of the Equity Support Agreement between Hallwood Energy and the Hallwood Group.

The Farmout Agreement between Hallwood Energy and FEI Shale contained an arbitration provision, an agreement to which the Hallwood Group was not a party. The Equity Support Agreement, between Hallwood Group and Hallwood Energy, did not contain an arbitration provision.

**B.     Dispute between Hallwood Energy and the Hallwood Group**

A disagreement arose in February 2009 between the Hallwood Group and Hallwood Energy about whether or not the Hallwood Group was required to make another payment under the Equity Support Agreement. The Hallwood Group did not make the payment. Hallwood Energy filed for bankruptcy on March 1, 2009.

On March 30, 2009, Hallwood Energy initiated an adversary proceeding in the bankruptcy court against the Hallwood Group for breach of the Equity Support Agreement. In June of 2009, the bankruptcy court allowed Phoenix/Inwood and FEI Shale to intervene and prosecute claims on behalf of Hallwood Energy. Phoenix/Inwood and FEI Shale are creditors of Hallwood Energy in the bankruptcy proceeding, and both asserted claims against the Hallwood Group for breach of contract, tortious interference with contract, and causes of actions arising under the Bankruptcy Code.

The Hallwood Group filed its Motion to Compel Arbitration of several claims asserted by Phoenix/Inwood on March 23, 2010. The bankruptcy court issued an order denying the motion on May 18, 2010, which is the subject of this appeal.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(C) (2009)(appeals from orders denying motions to compel arbitration) and 28 U.S.C. § 158(a)(3) (2009)(interlocutory appeals from bankruptcy court).

In reviewing a decision of the bankruptcy court, this Court functions as an appellate court, applying the standards of review generally applied in federal court appeals. *See Matter of Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990). This Court reviews the bankruptcy court's conclusions of law under a *de novo* standard, findings of fact under a clearly erroneous standard, and mixed questions of fact and law under a *de novo* standard. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

## III. Analysis

### A. Was there an agreement to arbitrate disputes?

The first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate the dispute. *See Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). In determining whether the parties agreed to arbitrate, the court must consider: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Fleetwood Enter., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002).

Hallwood Energy never agreed to arbitrate its disputes with the Hallwood Group. The only contract signed by both parties was the Equity Support Agreement, which did

not contain an arbitration clause. In fact, the Equity Support Agreement contained a jury trial waiver and a consent to Texas state court jurisdiction. Both the waiver and the consent to jurisdiction are clearly inconsistent with an intent to arbitrate. This Court finds that the bankruptcy court correctly determined that no agreement to arbitrate existed between Hallwood Energy and the Hallwood Group.

      **B.     May the Hallwood Group compel arbitration through a theory of equitable estoppel?**

A non-signatory to a contract containing an arbitration clause may still invoke the clause in certain situations through equitable estoppel. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000). A non-signatory may enforce an arbitration clause when: (1) a signatory to an agreement containing an arbitration clause relies upon the terms of the agreement when asserting a claim against a non-signatory; or (2) when a signatory alleges interdependent and concerted misconduct by both the non-signatory and another signatory to the contract. *See Grigson,* 210 F.3d at 527. It is within the court's discretion to apply equitable estoppel to compel arbitration when demanded by non-signatories, and such a decision is reviewed for abuse of discretion. *Id*. at 528.

The bankruptcy court found that the Equity Support Agreement was the central agreement to the dispute between the Hallwood Group and Phoenix/Inwood and that the arbitration clause in the separate Farmout Agreement should not be invoked. The bankruptcy court reached this decision by reasoning that the equities did not weigh in favor of ordering arbitration when the Hallwood Group had the opportunity to negotiate

for its own arbitration clause in the Equity Support Agreement but did not do so.

This Court finds that the bankruptcy court did not abuse its discretion in refusing to employ equitable estoppel to compel arbitration against a non-signatory.

### C. Waiver of the right to arbitrate

Even if a party possesses a right to arbitrate a dispute, the party may waive that right by substantially invoking the judicial process to the detriment or prejudice of the other party. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). A party invokes the judicial process when it demonstrates a desire to settle the arbitrable dispute through litigation rather than arbitration. *Id*. This demonstration is decided on a claim-by-claim basis. *Id*. To determine if detriment or prejudice to the other party has occurred, three factors are considered: (1) the amount of pretrial activity related to the arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate. *Id*. at 346.

The bankruptcy court found that even if the Hallwood Group had a right to arbitrate, it had waived it by participating extensively in the adversary proceeding for nine months beginning in June of 2009. Through its own admission during this appeal, the Hallwood Group took three depositions, participated in fourteen more, and filed counterclaims. The bankruptcy court also found, based on its experience with the case and the parties, that the Hallwood Group had prejudiced Phoenix/Inwood in the

adversary proceeding and would prejudice the creditors of Hallwood Energy in the bankruptcy case if arbitration was ordered. The Hallwood Group did not file a request to arbitrate the claims until March 23, 2010, almost a year after the adversary proceeding in the bankruptcy court commenced and just two months before the trial setting. The bankruptcy court found that the delay caused by waiting on the results of arbitration would prejudice all of the creditors of the bankruptcy estate who are waiting on payment.

The bankruptcy court did not commit clear error in coming to these factual findings. This Court concludes that, based on these factual findings, the bankruptcy court correctly determined that the Hallwood Group waived any right it may have had to arbitrate its dispute by substantially invoking the judicial process to the detriment or prejudice of other parties.

### D.  Discretion to Refuse to Enforce Arbitration Provision

Even if the Hallwood Group had a right to arbitrate its dispute and did not waive that right, the bankruptcy court did not err by refusing to order arbitration. A bankruptcy court has discretion to refuse to enforce an otherwise applicable arbitration agreement when: (1) the underlying proceedings derive exclusively from the Bankruptcy Code; and (2) arbitration would conflict with the goals of the Code. *Nat'l Gypsum*, 118 F.3d at 1067.

In a similar case, the soon-to-be debtor filed suit in Texas state court for negligence, fraud, and several other state law claims. *See In re Gandy*, 299 F.3d 489, 493 (5th Cir. 2002). When the state court in *Gandy* granted a motion to compel arbitration, the debtor filed for bankruptcy and removed the original lawsuit to the bankruptcy court as an adversary proceeding. *Id*. Once in the bankruptcy court, the *Gandy* debtor consolidated several bankruptcy causes of action with her state law causes of action. *Id*. The Fifth Circuit concluded in *Gandy* that, although state law claims were present, the causes of action derived from the Bankruptcy Code predominated. *Id*. at 497.

In our case, Phoenix has asserted claims under the Bankruptcy Code for abuse of the bankruptcy process and turnover in addition to its state law claims of breach of contract and tortious interference with contract. Just as in *Gandy*, the bankruptcy court recognized that though state law claims were present, the crux of the lawsuit deals with bankruptcy matters. The bankruptcy court found that the heart of Phoenix's claims against the Hallwood Group center around the Hallwood Group's alleged abuse of the bankruptcy process. This includes claims by and against the bankruptcy estate. Phoenix/Inwood has accused the Hallwood Group of forcing Hallwood Energy into bankruptcy in order to avoid obligations to Hallwood Energy. The bankruptcy court also concluded that ordering the parties to arbitration would conflict with the purposes of the Bankruptcy Code by denying creditors a quick and orderly resolution of Hallwood Energy's debts.

This Court finds that the bankruptcy court correctly determined that it had discretion to refuse to enforce the arbitration provision under *National Gypsum* and *In re Gandy* because issues of bankruptcy law predominated. *See In re Gandy*, 299 F.3d at 497. This Court also finds that the bankruptcy court did not abuse that discretion in denying the Hallwood Group's motion to compel arbitration because dividing claims and parties into piecemeal litigation conflicts with the purposes of the Bankruptcy Code. *Id*. at 499–500.

E.   **HGI's Motion to Strike**

The Hallwood Group has also filed a Motion to Strike portions of the appellate record submitted by Phoenix/Inwood because it argues those portions were not before the bankruptcy court prior to that court's decision to deny the Hallwood Group's Motion to Compel Arbitration. Specifically, the sections objected to by the Hallwood Group relate to Phoenix/Inwood's argument for waiver of the Hallwood Group's arbitration rights. Because this Court disposes of the Hallwood Group's appeal without considering the additional materials submitted by Phoenix/Inwood, HGI's Motion to Strike is moot.

IV.   **Conclusion**

After review of the bankruptcy court record, the briefs of the parties, and the applicable law, the Court concludes that the bankruptcy court's determination was correct. The decision of the bankruptcy court to deny the Hallwood Group's Motion

to Compel Arbitration is **AFFIRMED**. The Hallwood Group's Motion to Strike is **DENIED as moot.**

    **SO ORDERED**

Signed October 21st, 2010

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE